UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ESTATE OF JAMES T. BULLOCK JR. et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Cause No. 1:08-cv-1530-WTL-JMS ) ) |
| CORRECTIONAL MEDICAL SERVICES, INC. et al., | ) ) ) |
| Defendants. | ) |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

Before the Court are three motions: (1) the Defendants' Motion for Partial Judgment on the Pleadings (Docket No. 35); (2) the Defendants' Motion for Summary Judgment (Docket No. 46); and (3) the Defendants' Motion to Strike Portions of the Plaintiffs' Response (Docket No. 58). The motions are fully briefed, and the Court being duly advised, **GRANTS IN PART** the Motion for Summary Judgment, **DENIES AS MOOT** the Motion for Judgment on the Pleadings, and **DENIES AS MOOT** the Motion to Strike, for the reasons. and to the extent set forth below.

### I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d

582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

James T. Bullock, Jr. was arrested on October 25, 2006.  Bullock was taken to the Marion County Arrestee Processing Center where he was booked.  As part of the booking process, early on October 26, Bullock underwent a medical screening.  During this screening he reported that he did not use drugs and he was not currently detoxing from any substance.  Bullock indicated that he had medical problems including arthritis, hypertension, and a heart condition.  He also reported that he was taking various medications.  Bullock was placed on "sick call" to see a physician.

Later on October 26, Bullock appeared in court.  He was taken back into custody following his court appearance and another medical screening was performed.  Bullock denied drug use and reported he had previously been hospitalized for blood pressure and cardiovascular problems.  The intake report recommended follow up with a physician.

On October 26 and 27, Bullock's wife, Diana, called the Marion County Jail.  She "talked to someone at the front desk and explained to them that he [James] needed medicine for his heart problem, and they told me to give my number and my name and they would call me

back, they was (sic) going to go back where he was at and see what was the problem." Bullock Dep. pg. 54, lines 12-17. Diana Bullock also stated that when her husband was first arrested she "attempted to go down there [to the jail] and take his medicine down there, to the front desk, and see would they give him the medicine that I had." *Id.* at 61, lines 4-6.

Around noon on October 28, Bullock was found unresponsive on the jailhouse floor. Despite attempts to resuscitate him, Bullock was pronounced dead at Wishard Memorial Hospital shortly after 1:30 p.m. An autopsy performed by the Marion County Coroner's Office listed Bullock's cause of death as "hypertensive atherosclerotic cardiovascular disease." Pls. Ex. 2. "Chronic obstructive pulmonary disease" and "chronic drug abuse" were listed as contributory factors and the post-mortem toxicology report revealed "Cocaine/Metabolites" in Bullock's blood and urine. *Id.*

### III. DISCUSSION

Bullock's widow and his estate brought this suit against Correctional Medical Services, Inc. ("CMS") and Marion County Sheriff Frank Anderson in state court alleging state and federal causes of action. The Defendants properly removed the case to this Court.

The Plaintiffs' federal claims are brought pursuant to 42 U.S.C. § 1983 and allege that the Defendants' "failure . . . to ensure Bullock was provided with proper and adequate medical care constitutes deliberate indifference in violation of the 8th Amendment to the United States Constitution." Compl. ¶ 22. The Complaint also contains a Fourteenth Amendment due process claim,[1] also brought pursuant to § 1983, based on the Defendants' alleged failure "to ensure

---

[1] The Court notes that the analysis of the Plaintiffs' Eighth and Fourteenth Amendment claims is identical. *See Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). In *Palmer*, the Seventh Circuit discussed whether a pre-trial detainee's constitutional claim arises under the

Bullock was provided with proper and adequate medical care." *Id*. ¶ 23.

In order to prevail on their § 1983 claims, the Plaintiffs must prove that the Defendants violated the Eighth Amendment's proscription against cruel and unusual punishment by displaying deliberate indifference to Bullock's serious medical needs. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A "deliberate indifference to serious medical needs" claim has both an objective and a subjective component. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The objective component requires a showing that Bullock's medical condition was objectively serious. Although the Defendants initially made a half-hearted attempt to claim that Bullock did not have a serious medical condition, apparently recognizing the weakness of this position, the Defendants concede that Bullock had a serious medical condition. *See* Reply at 8. The Defendants argue, however, that none of them had the requisite state of mind to support a finding of deliberate indifference.

> To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. . . . The officials must know of and disregard an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Additionally, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Hayes*, 546 F.3d at 522 (citations and internal quotation marks omitted). With that standard in

---

Eighth Amendment's Cruel and Unusual Punishment Clause or under the Fourteenth Amendment's Due Process Clause. Ultimately, the court emphasized that inquiry into which clause applies would be "purely academic" because "'deliberate indifference is the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments respectively." *Id*. at 593.

mind, the issues raised in the Defendants' Motion for Summary Judgment will be addressed, in turn, as they pertain to each Defendant.

### A. Sheriff Frank Anderson.

The Plaintiffs named, as a Defendant in this case, Marion County Sheriff Frank Anderson in his official capacity. Such official capacity claims are treated as claims against Marion County itself. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). Counties and other governmental entities may not be held liable for the unconstitutional acts of their employees or agents under a *respondeat superior* theory, but rather are liable for those acts only if they were carried out pursuant to an official custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (citation omitted) ("Misbehaving employees are responsible for their own conduct, units of local government are responsible only for their policies rather than misconduct by their workers."). "In order to survive summary judgment on a § 1983 official-capacity claim, the plaintiff must present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Grieveson*, 538 F.3d at 771 (citations and internal quotation marks omitted). In addition, the plaintiff must show that the official policy or custom was the cause of the alleged constitutional violation – the "moving force" behind it. *Id.*

In the instant case, the Plaintiffs make no allegation that Marion County has an official policy or widespread custom of depriving prisoners of medical care. Nor do the Plaintiffs allege that a county decision-maker such as Sheriff Anderson took deliberate action to deprive Bullock of medical care. The Court has scoured the parties' pleadings and briefs and has been unable to

find a single fact supporting municipal liability in this case. In short, absent any evidence whatsoever, the Plaintiffs' statement that "Sheriff Anderson demonstrated deliberate indifference to Bullock's medical needs," Compl. ¶ 17, is insufficient to support an official-capacity claim against Sheriff Anderson. Accordingly, summary judgment is appropriate as to the Plaintiffs' § 1983 claims against Sheriff Anderson in his official capacity.

The Plaintiffs also assert a § 1983 claim against Sheriff Anderson in his individual capacity. As sheriff, Anderson was responsible for the jail at the time of Bullock's death; however, Sheriff Anderson cannot be held liable pursuant to § 1983 simply because of his supervisory status. Rather, "[s]ince a section 1983 cause of action is against a 'person,' in order to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006) (citations and internal quotation marks omitted). The Plaintiffs have made no showing that Sheriff Anderson was personally involved in the decision to withhold medical care from Bullock. Indeed they have not produced any evidence indicating that Sheriff Anderson even knew that Bullock was incarcerated at the Marion County Jail. There is simply nothing in the record establishing that Sheriff Anderson knew anything about Bullock or his medical condition prior to Bullock's death. Therefore, summary judgment as to the Plaintiffs' § 1983 claims is also appropriately granted to Sheriff Anderson in his individual capacity.

   **B.**  **Correctional Medical Services, Inc.**

A private corporation such as CMS, which is acting under the color of state law is treated

as if it were a municipal entity for § 1983 purposes. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). Thus, like Marion County, CMS cannot be held liable for the actions of its employees under a *respondeat superior* theory, but can be liable for its own practices or policies that result in a constitutional deprivation. "[A] corporate entity violates an inmate's constitutional rights 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.'" *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (quoting *Estate of Novack* ex rel. *v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)).

Thus, the Plaintiffs face the same problem as they did with their official-capacity suit against the Sheriff – they never allege that CMS maintains a policy that deprives prisoners of their constitutional rights. Absent any admissible evidence illustrating that CMS had a policy or practice that resulted in a constitutional deprivation, the Plaintiffs' § 1983 claims against the corporate entity fails; accordingly, summary judgment is appropriate with respect to the § 1983 claims against CMS.

All that remains are the Plaintiffs' state law claims. This case originally was filed in Marion County Superior Court and was removed to this Court by the Defendants based upon the Plaintiffs' § 1983 claims. The Court's jurisdiction on all of the Plaintiffs' remaining claims is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based upon state law that are closely related to the federal claims in a case. However, "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008). There are exceptions to that general rule, and

7

the court should decide the merits of a supplemental state claim when (1) the statute of limitations has run, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is "absolutely clear" how the state claims should be decided. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). None of those exceptions apply here. Remanding the case to Marion County Superior Court will avoid any statute of limitations problems; none of this Court's resources have been expended on the state law claims, *see id.* ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"); and it does not appear to the Court that the proper resolution of the state law claims is so obvious as to overcome the presumption that remand is appropriate. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in the Plaintiffs' amended complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED IN PART**. The Defendants' Motion for Partial Judgment on the Pleadings and the Defendants' Motion to Strike are **DENIED AS MOOT**. In the absence of any remaining federal claims, the Court declines to continue to exercise jurisdiction over the Plaintiffs' supplemental state law claims; accordingly, those claims are **REMANDED** to the Marion County Superior Court.

SO ORDERED: 02/08/2010

8

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

James F. Bleeke
Sweetin & Bleeke PC
jim@sweetinbleeke.com

Jeb Adam Crandall
Sweetin & Bleeke PC
jeb@sweetinbleeke.com

Adam Lenkowsky
Roberts & Bishop
alenkowsky@roberts-bishop.com

Jonathan Lamont Mayes
City of Indianapolis, Corporation Counsel
jmayes@indygov.org

Paul K. Ogden
Roberts & Bishop
pogden@roberts-bishop.com

Anthony W. Overholt
Frost Brown Todd LLC
aoverholt@fbtlaw.com

Justin F. Roebel
City of Indianapolis, Office of Corporation Counsel
jroebel@indygov.org